James Hogan
#67876, ISCI Unit 11
PO Box 14
Boise, ID 83707

Andrew J.J. Wolf
#35408, ISCI Unit 9
PO Box 14
Boise, ID 83707

Plaintiffs

U.S. COURTS

AUG 0 7 2015

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

oOo

JAMES HOGAN, and ANDREW J.J. WOLF,

     Plaintiffs,

vs.

IDAHO DEPARTMENT OF CORRECTION; KEVIN
KEMPF, JEFF ZMUDA, SHANNON CLUNEY,
SHANE EVANS, HOWARD (KEITH) YORDY,
GARRETT COBURN, LEROY PENEKU, JESSYCA
TYLER, JENANETTE HUNTER, sued in their
official capacities; JEFF KIRKMAN,
DAN COPLAND, JOSH TEWALT, FSO HOUSTON,
FSO S. BONNER, and KATHLEEN WILLSON,
sued in their individual and official
capacities; and their successors in
office,

     Defendants.

Case No. 1:15-CV-308-REB

PRISONER CIVIL RIGHTS COMPLAINT

(Bench Trial Requested)

COMES NOW, James Hogan and Andrew J.J. Wolf, Plaintiffs pro se, in the above-entitled action, and hereby presents its Complaint and offers the following in support thereof:

I. INTRODUCTION

The Idaho Department of Correction has failed to provide Plaintiffs with a diet consistent with their religious beliefs. This forces the Plaintiffs to

COMPLAINT - 1

violate their core religious beliefs on a daily basis, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUPA") of 2000, the First and Fourteenth Amendments of the Constitution of the United States, and Idaho Code §§ 73-401 thru 73-404, Religious Freedom Restoriation Action ("RFRA"). The Plaintiffs seek declaratory and injuncitve relief, as well as damges to remedy the Defendants' violations of their civil rights under the law, and to ensure that Defendants implement sustainable reforms which guarantee the religious freedoms protected by federal law, the United States Constitution, and state law.

## II. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), and supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. § 1367.

2.    Declaratory, injunctive relief and damages sought by Plaintiffs are authorized by 42 U.S.C. §2000cc-3(b) and 28 U.S.C. §§ 2201, 2202, 42 U.S.C. § 1983, F.R.Civ.P. 65, and Idaho Code § 73-402.

3.    Venue is proper in this proceeding pursuant to 28 U.S.C. § 1391, for Defendants operate 13 facilities in the state of Idaho, and all events, actions, or omissions giving rise to this Complaint occurred in the District of Idaho.

## III. PARTIES

A.   Plaintiffs

4.    Plaintiffs, James Hogan and Andrew J.J. Wolf, are state prisoners who are presently housed at the Idaho State Correctional Institution ("ISCI"), state of Idaho, in the care, custody and control of the Idaho Department of Correction ("IDOC").

COMPLAINT - 2

B.   Defendants

5.   Defendant, Idaho Department of Correction, incarcerates the Plaintiffs in one of 13 facilities across the state of Idaho, According to the 2014 Legislative Fiscal Report, IDOC has an annual budget of approximately $225 million and receives in excess of $1 milion in federal funding. IDOC is an "Institution" within the meaning of 42 U.S.C. §§2000cc-2(a) and 1997, and is correctly named under 42 U.S.C. §§ 2000cc-2(a) and 2000cc-5(4)(A)(ii).

6.   Defendant, Kevin Kempf, is the director of the IDOC, and pursuant to Rule 25, F.R.Civ.P., has assumed former IDOC Director, Brent Reinke, actions in respect to legally being responsible for the overall operations of the IDOC and each Insitution under its jurisdiction during his tenure. Renike approved IDOC Policy 403 - Religious Practices, on 9/20/2007, which requires the creation of a Standard Operating Procedure ("SOP") that includes provisions for religious diets. Reinke also approved SOP 402.02.01.001 - Religious Activities, on 4/8/2014, which limits religious diets to only "Selective Diets" already available to prisoners. No selective diets are provided which meet the requirements for Kosher, Halal or Catholic observances. As Director's Kempf and Reinke had final authority for approval, implementation and enforcement of all Policies, including its Dietary and Religious Policies. Kempf, prior to assuming the position of IDOC Director has acted in numerous other capacities during the events described herein, as the Deputy Director, Chief of Prisons, Chief of Operations. Kempf approved 404.02.01.001 - Diets for Offenders. Selective, Medical, Special Provision and Infirmary, on 2/25/2013. This SOP sets the criteria used to exclude Plaintiffs from the selective diet program, forcing them to eat food that violates their religious beliefs and does not include provisions for Kosher, Halal or Catholic diets\ Kempf is being sued in his official capacity.

COMPLAINT - 3

7.   Defendant, Jeff Zmuda, is currently the Chief of the IDOC Chief of the Division of Prisons. Policy 403 states that Zumda is responsible for ensuring that Facility Heads and Staff implement IDOC Policy, SOP's and Directives. Zmuda was previously IDOC Deputy Chief of the Division of Prisons. SOP 403.02.01.001 states that Zmuda was responsible for promulgating SOP's to fulfill IDOC Directives and designating persons to serve on the Religious Activities Review Committee ("RARC"). Zmuda is being sued in his official capacity.

8.   Defendant, Shannon Cluney, is currently the IDOC Deputy Chief of the Division of Prisons for the IDOC. Policy 403 states that Cluney is responsible for promulgating SOP's to fulfill Directives and designating persons to serve on the RARC. Cluney is being sued in this official capacity.

9.   Defendant, Shane Evans, is in the employ of IDOC, and at all times described herein was the IDOC Chief of the Division of Education, Treatment and Reentry, and was the oversight authority for selective, medical, special provision and infirmary diets. Evans approved SOP 404.02.01.001, on 2/25/2013, which dose not include provisions for Kosher, Hala or Catholic Diets. Evans is sued in his official capacity.

10.  Defendant, Howard (Keith) Yordy, is the current Warden (Facility Head) of ISCI. SOP 403.02.01.001 states in part that the Facility Head is responsible for ensuring that Staff Members at ISCI adhere to the provisions of IDOC SOP's and for implementing those SOP's at ISCI. He is also responsible for appointing the members of the Religious Activities Oversight Committee ("RAOC") at ISCI. In accordance with IDOC SOP 316.02.01.001 — Offender Grievance Process, Yordy is the final appellate authority for prisoner grievances at ISCI and responded to all of Plaintiffs Grievances regarding the matters more fully described herein.

COMPLAINT - 4

Yordy is being sued in his official capacity.

11.  Defendant, Garret Coburn, is the Deputy Warden of Operations at ISCI. Coburn oversees both Religious Activities and Food Service at ISCI. Coburn is also the reviewing authority on certain grievances at ISCI, and responded as such to Plaintiffs grievances submitted by them. Coburn is sued in his official capacity.

12.  Defendant, Leroy Peneku, is the Deputy Warded of Security at ISCI. Peneku is the review authority for certain grievances at ISCI, and under **Balla, et al. v. Idaho St. Bd. of Corr., et al.**, 1:81-cv-1165-BLW (D.Idaho), Notice of Compliance, Exhibit A, Court Order No. 1, p.12, is responsible for Religious Diets. (**Id. Dkt. 133**). Peneku is sued in his official capacity.

13.  Defendant, Jessyca Tyler, is the Dietician for IDOC, and is responsible for the implementation of diets within the IDOC. Tyler is one of the individuals who responded to Plaintiff Wolf's grievance when he sought his religious diet and then chose to remove the Fish Dinner from the menu, which Wolf was seeking to receive every Friday for dinner during Lent. Jessyca Tyler is sued in her official capacity.

14.  Defendant, Jeanette Hunter, is the Food Service Manager ("FSM") at ISCI. Hunter is the Level One responder to Plaintiffs grievances regarding selective and religious diets. Hunter is sued in her official capacity.

15.  Defendant, Jeff Kirkman, is a employee of the IDOC, and a member of the RARC. Kirkmans responsibilities includes reviewing RAOC recommendations, reviewing and updating IDOC SOP's, and advising the Deputy Chief of Prisons on issues relating to religious activities. Kirkman knew or should have known that the Religious Policy he promulgated as a member of the RARC would violate the Plaintiffs clearly established rights by not including Kosher, Hala and Catholic diets. Kirkman is sued in his individual and official capacities.

COMPLAINT - 5

16.   Defendant, Josh Tewalt, is a member of the RARC. Tewalts responsibilities include reviewing RAOC recommendations, reviewing an updating IDOC Policy and SOP's, and advising the Deputy Chief of Prisons on issues relating to Religious Activities. Tewalt knew, or should have known, that the Religious Policy he promulgated as a member of the RARC would violate the Plaintiffs' clearly established rights by not including Kosher, Hala, and Catholic diets. Tewalt is sued in his individual and official capacities.

17.   Defendant, FSO Houston, is an employee of the IDOC, and works as a Food Service Officer at ISCI. Houston's responsibilities is to supervise the daily Food Service operation, and see that diets for prisoners are distributed according to IDOC Policy and SOP. Houston was directly involved in denying Plaintiff Hogan his non-pork selective diet which is directly related to his religious beliefs and Koranic law. Houston is sued in her individual and official capacities.

18.   Defendant, FSO S. Bonner, is an employee of the IDOC and works as a Food Service Officer at ISCI. Bonner's responsibilities is to supervise the daily food service operation and see that diets for prisoners are distributed according to IDOC Policy and SOP. Bonner was directly involved in denying Plaintiff Hogan his non-pork selective diet which is directly related to his religious beliefs and Koranic law. Bonner is sued in his individual and official capacities.

19.   Defendant, Kathleen Willson, is an employee of IDOC and works at ISCI. Willson is responsible for the processing of the IDOC Selective Diets Requests at ISCI. Willson directly interfered with Hogan's selective diet of non-pork which is directly related to his religious beliefs and Koranic law. Willson is sued in her individual and official capacities.

20.   Defendants lead counsel of record is: Mark Kubinski, Deputy Attorney

COMPLAINT - 6

General – Corrections Section, 1299 N. Orchard St., Ste. 110, PO Box 83720, Boise, ID 83720–0018.

## IV. FACTUAL ALLEGATIONS

21.   This action arises under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, and the permanent injunction set forth in **Balla, et al. v. Idaho St. Bd. of Corr., et al.**, 1:81–cv–1165–BLW (Dkt. 133), 595 F.Supp. 1558 (D.Idaho 1985).

22.   This action also arises under 42 U.S.C. § 1983 to remedy the deprivation, under color of state law, of federal rights guaranteed by the First and Fourteenth Amendments under the Constitution of the United States as set forth more fully below.

23.   In **Balla, Id.**, the District Court set forth its Memorandum Opinion, Findings of Fact, Conclusions of Law, and Order regarding certain conditions of confinement to be made at ISCI. As a dirct result of the **Balla** Court's decision on Nov. 1, 1984, the Plaintiff Class and Defendants on April 29, 1985 entered into a Notice of Compliance (Dkt. 133) which set forth the terms of the permanent injunction that would e put into place. One of these was setting forth the Policy and Procedures as to how "religious diets" would be made available to IDOC Prisoners. (**See**: Balla, Dkt. 133, EXHIBIT A, Court Order NO. 1, Page 12.)

24.   Balla defendants had agreed to provide Religious Diets and they would be "specifically approved in writing by the Chaplain and Deputy Warden, Security." (**Id.** at Dkt. 133. Exhibit A. Court Order No. 1. p.12. ¶4. A–F.) Over the years since the enactment of the Balla Courts permanent injunction and compliance plans IDOC Officials have chose to revise their Policies concerning "religious diets". originally in the compliance planse (Dkt. 133) they were titled "Field Memorandum".

COMPLAINT – 7

Over the years they have been changed to be called; "Policy", "Policy and Procedure" ("P&P"), "Directive No." ("Dir. No."), and "Standard Operating Procedure" ("SOP").

25.  Since the implementation of the Notice of Compliance, Court Order No. 1, p. 12, para 4. A-F, (Dkt. 133) the Balla Defendants have implemented: 1) Policy 403, Version 2.0 Religious Practices, Adopted 6-7-1985; 2) Field Memorandum ISCI Control Number 403.02.01.001 (ISCI FM), Adopted 9-1991, Religious Activities; 3) 404.02.01.003, Version 3.0, Diets for Offenders: Selective, Medical, Special Provision, and Infirmary, Adopted 5-1-1996; 4) Policy Number 404, Food Service; 5) Directive No. 404.02.01.001, Food Service Management, Adopted 3-5-2001; and 6) Drietive No. 404.36.04.003, Modified Diets, Originally Adopted 6-1-1995. In defendants actions of adopting these FM's, Policies, SOP's and Directives, they have chose to eliminate offering "religious diets" completely without having sought permission from the **Balla** Court in requesting to modify the April 21, 1985 Notice of Compliance (Dkt. 133) concerning religious diets, all contrary to well established Court Order.

26.  IDOC's failure to provide religious diets, Kosher, Hala and Catholic for the purposes of this action (Three main religions), violates their federal rights. IDOC's dietary policies force the Plaintiffs, who have a religious basis for consuming a religious diet, to violate their core beliefs on a daily basis.

27.  The substantial burden that IDOC's policies imposed on the Plaintiffs by refusing them a religious diet, are not necessary to achieve any compelling government interests.

A.   IDOC Does Not Provide Kosher, Hala or Catholic Diets

28.  IDOC dose not provide Kosher, Hala and/or Catholic meals ("religious diets") to any of its Prisoners, including Plaintiffs.

COMPLAINT - 8

30. Instead of providing Kosher, Hala and/or Catholic meals, the IDOC offers a mainline menu option for all meals. In addition to this option, Prisoners may select from four (4) "Selective Diet" options: 1) lacto-ovo (no meat); 2) vegan (no animal products), healthy choice (low-fat and low-sugar), and 4) no-pork, by submitting a request to the Food Service Manager ("FSM") by the 25th of each month for the next month for that particular Selective Diet.

31. Plaitniff Hogan on or about 10/10/14 submitted a IDOC Concern Form to VRC ISCI Chaplain J. Truiillo requesting a Hala religious diet. This was denied. A timley grievance (Grivance No. II 140001213) as submitted in which Hogan pointed out that IDOC refuses to offer Hala meals which forces him to eat food that violates the fundamental tenets of his faith on a daily basis, all inviolation of RLUIPA. In addition he pointed out that IDOC's refusal to provide him with his requested religious diet irreparably harms him by substantially burdening his right to exercise his sincerely held religious beliefs. He even went so far as to address that most states and the Federal BOP provide kosher and hala meals in spite of the cost, so IDOC has no compelling interest in outright denial of religious diets to Prisoners who require them.

32. On 11/6/14 Defendant Hunter responded by stating: "IDOC is currently working on policy changes to include religious meals but for now inmates can select form themeal options that most closely fit their dietary requirements." Defendant Coburn on 11/13/14 modified the grievance by stating: "We are aware of the religious needs of inmates in regards to dietary requirements and are considering several options. The policy will be updated when these are available. We are unaware of a time frame at this time." Hogan appealed this grievance by stating that Reviewing Authority Coburn's response was unacceptable for every day

COMPLAINT - 9

they deny him a religious diet, they are causing him irreparable injury due to not providing religious diets which forces him to eat food that violates his body and basic religious beliefs. "Being forced to defile my body like this has eternal consequences for me. That you haven't got any time frame for implementing a religious diet program causes me great dismay. Please implement a religious diet program, that includes halal, immediately to help remedy the irreparable harm you inflict upon me daily. You can worry about the all the arbitrary details of policy later and implement religious diets now for myself and those similarly situated."

33. Defendant Yordy on 12/10/14 denied Hogan's grievance by stating: "Staff are following the policy in allowable meals. All offenders must choose one of the existing menu options of the meal that suits their desire for health and religious beliefs. At this time, the department does not offer what you are asking for."

34. In order for Hogan to recieve a Halal diet, the food must derive from religiously acceptable sources, be stored in Halal containers, prepared in a particular manner, and served on tableware that has not contacted Non-Halal food. In addition, meat and dairy products may not be mixed.

35. To be Halal a meat must be pork-free and slaughtered to Koranic Law, which is that similar to the way Kosher Meats are prepared.

36. Plaintiff Hogan's only option available to him at this time is to chose the non-pork diet from the "Selective Diets" that IDOC makes available but is not Halal nor has IDOC to date implemented any Religious Diet Policy.

37. Despite IDOC not offering religious diets, defendants have elected to accommodate Hogan and other Prisoners to practice Ramadan each year. As such this requires Hogan and others similarly situated to not eat during daylight hours and

COMPLAINT - 10

requires them to eat their meals prior to sunrise and after sunset. As a result
ISCI Food Service gives Hogan and others similarly situated their evening meal
at a designated time in disposable trays along with their breakfast, which on
weekends only consists of vegan milk, fruit and 4 oz bowl of dry cereal, and d
during the weekday a sack lunch. All which are to be the same caloric count that
other Prisones receive.

38. Hogan sent a Concern Form to Defendant Hunter regarding the fact that
the 4 oz bowl of dry cereal on the weekend breakfast meal did not equal that of
what was served on Saturday breakfast of eggs, potatoes, cereal, bread and milk
or on Sunday breakfast of biscuits, gravy, potatoes, dry cereal and fruit bar.
As a result Hunter stated: "The Ramadan menu is not the same as the hot meals.
You elected to sign up for observance of Ramadan. The meal is served cold because
Pendyne is not open when you eat. I have increased the cereal portion every day."
A "Ramadan Menu" is not part of **any** IDOC Policy, Procedure, SOP, Directive or
Selective Diets.

39. Hogan also sent a IDOC Concern Form to IDOC Dietician on 7/9/14 in
regards to the dietary requirements of the Ramadan meals for he felt that they
were not being met as to dietary standards, as well as hot foods being hot, and
cold foods being cold to them that way. The response was given "Please discuss
with FSS Hunter. Thank you."

40. Hogan with the aid of another Muslim Prisoner who works in the ISCI
Pendyne (Kitchen), presented a proposal to Defendant Hunter on or about 6/6/2015
prior to Ramidan in order to see if they could get permission to come to Pendyne
at approxmmiately 0430 am (prior to the 0500 Count) and all those who were
partaking in Ramidan would be able to eat prior to sunrise and also get their sack

COMPLAINT - 11

lunch at that time as well. This was due to the fact that the morning breakfast meal is already ready to be served at that time. Defendant Hunter said she had no problem with this provided security would authorize it. Upon speaking with Chaplian Trujillo, he said he would take the matter up with Security. Upon doing so it was denied.

41.   Despite Hogans request for early feeding for himself and those similarly situated, it was discovered that ICI-O Facility had authorized this for Ramadan in 2014 and again for 2015 for a prisoner who was participating in 2015 Ramadan had came to ISCI and provided a copy of the Memo. This authorized those Prisoners who were participating in 2014 and 2015 Ramadan to go to breakfast at 0430 am, receive 5 dates for that day and eat their breakfast. They would then pick up their dinner trays at 20:30 pm and a sack lunch. Additionally, Prisoners were also permitted to wear their Kufis (prayer caps) at all times during Ramadan. This was signed off by Chaplain Holcomb for 2014 and Chaplain Chikatulah for 2015.

42.   Plaintiff Wolf, who is a practicing Catholic, wished to practice the precepts to the Catholic Church and on 10/25/2014 submitted a IDOC Concern Form to Defendant Tyler requesting that a Lent Meal for himself and other practicing Catholics who are similarly situated to either have a ovo lacto or vegan meal for Ash Wednesday and each Friday during Lent, and provide a fish dinner which was currently on the IDOC Cycle Menu. Tyler responded on 10/30/14 stating that a Lenten Diet is not one that is authorized by policy and he could chose from one of the selective diets offered by IDOC policy.

43.   Wolf then on 10/29/14 submitted a IDOC Concern Form to VRC ISCI Chaplain Trujillo requesting for 2015 Lent a menu for Ash Wednesday and 6 Friday's as he did in his Concern to defendant Tyler. Trujillo asked Wolf to make an appointment

with him. Wolf complied and met with Trujillo along with one other ISCI Prisoner, David Morgan, #69125, who was requesting a Kosher Meal, neither were given any type of resolution to the matter.

44.  Wolf on 11/24/14 filed a timely Grievnace (Grievance No. II 140001282) requesting a religious diet for 2015 Lent for himself and those similarly situated. Defendant Hunter on 11/25/14 replied as the Level 1 - Initial Responder stating: "IDOC is currently working on policy changes to include religious meals but for now inmates can select from the meal options that most closely fit their religious dietary requirements. Currently the options can be selected from the selective diets available and listed on the selective diet request form." On 11/26/14 Defendant Coburn as the Level 2 - Reviewing Authority Response stated: In addition to the information from Ms. Hunter, you may choose to remove the meat from your meal (mainline or selective diet) on the days that you have listed. Coburn's response was in part, by stating to pick the meat out, a violation of IDOC Policy 217, Ethics Standards and Conduct.

45.  On 12/1/14 Wolf filed a timely grievance appeal in which he stated: "IDOC's continued failure to provide a religious diet for prisoners violates RLUPA. Level 2 response is indicative to the IDOC's view that the burden here falls on me. In fact IDOC must feed us & provide us a diet consistent with our religious needs. We don't get time to pick the meat out of our food, but neither should we have to. It's extremely insensitive to suggest so. A lent diet can be accomidated using current, in stock, menu items. Failing to do so for lent is irrepable injury to myself and others & provides no greater burden on IDOC than the no-pork changes already occasionally done. The level 1 response is that IDOC is making policy changes regarding religious meals. I beleive that myself and

COMPLAINT - 13

other prisoners who are requesting religious meals (Kosher, Halal, Lenten, others) should be permitted to participate in these Policy/SOP changes, not just the IDOC Administration, so as to ensure that the Policy/SOP meets myself and those similarly situated needs, regarding religious diet meals. You already accomidate the Muslims for Ramadan with IDOC menu so you can do likewise for 24 lenten meals."

46.   Defendant Yordy on 12/15/14 responded at the Level 3 - Appellate Authority by stating: "We will attempt to make a partial accommodation to your request. You may eat Mainline for these two months but you must declare beforehand which of the other 4 meals you will be eating for Ash Wednesday and the seven Friday's. It can be a combination of the five meals for the eight days but we can't make a specific meal every Friday, such as Fish. Yo may obtain a menu from food service and calculate what the meals will be on those days and let us know accordingly. You and likely others making the smae request are not going to be able to simply decide on those days which of the other four you want. Food service has a plan for a specific number of meals for each diet and prepare accordingly."

47.   Despite Wolf's attempts to have fish served each Friday for dinner, defendants removed fish from its Menu after Wolf had pointed out that there was no substantive burden in serving fish each Friday fo rit was already on the Menu.

48.   Under Plaintiff Wolf's Catholic Faith, the Fourth Precept to the Catholic Church sets forth the days of fasting on days of abstinence. A day of abstinence is on Fridays which he is not allowed the use of flesh meat, including meat soup and gravy. Flesh meat is the flesh of warm-blooded animals, including birds and fowl's. Fish, snails, frogs, oysters, shrimps and crabs may be eaten on abstinence days, as well as milk, butter, cheese, eggs. Lard and the fat of any animal may be used in cooking and seasoning. On an abstinence day unless it is also a fast

day, only quality, not the quantity, of food is regulated.

49. Currently none of the meal options at ISCI meet Wolf's religious needs at ISCI, and for pursuing the matter Defendants have chose to retaliate against him by removing fish from the menu when it was a least substantive means to meet his religious diet needs. Addtionally, IDOC and Defendants have yet to implement any "religious diets" as stated would be done in his grievance.

B.   Plaintiff Hogan Was Removed From A Selective Diet

50. Defendants Houston, Bonner and Willson have continually stopped Hogan's non-pork selective diet. This is due to the fact that when getting to the diet window and informing the line servers he needs a non-pork meal he is told to take a mainline tray for no pork products are being served on that particular meal.

51. It is upon information and belief that the Food Service Officers, defendants Houston and Bonner have a duty and responsibility to ensure that the line servers are serving the correct diet tray that a Prisoner, such as Hogan, requests and they have failed to do so.

52. Hogan on 10/4/14 requested a non-pork meal at the diet window and was informed to take a mainline tray for no pork products were being served with the meal. As a result, Hogan's non-pork meal was stopped due to Defendant Houston despite being told by the line servers to take the mainline tray. As a result Hogan was infomred he was not eligible to sign up for a non-pork meal until the month of January 2015.

53. As a result, Hogan sent Defendant Houston a IDOC Concern Form to Defendant Houston regarding her actions  in terminating his non-pork diet and explained to her "I always ask for non-pork – They tell me its a mainline, we have went through this before. I have to take it or go hungry. If you try to take me off my religious

COMPLAINT – 15

diet I will file papers in court and will not eat until its cleared up." Defendant
Houston replied by stating that he needed to speak with Defendant Bonner as he
was the one who had removed him from his diet, and claimed she had nothing to do
with the matter.

54.  Hogan then sent Defendant Coburn a IDOC Concern Form requesting again
if he could be put on a Halal diet per his religious belief. Defendant Willson
answered for Defendant Coburn informing Hogan that he was on selective diet
restriction until January, and he could turn in a "Request for Selective Diet"
Form in December. As a result Hogan refused to eat any meals that contained any
pork products that would defile his body and were not to be eaten for it violates
the tenets of his religious beliefs.

55.  On 10/10/14 Hogan submitted to Defendant Willson a IDOC Concern Form
explaining to her again that he was on non-pork diet due to his religious beliefs,
and was taken off due to the ISCI Pendyne line servers informed him to take a
mainline tray for it was the same as non-pork. Defendant Houston observed this
and terminated his diet. Hogan requested if she would fix the matter. On 10/15/14
Defendant Hunter responded to the Concern Form informing Hogan that the matter
was corrected for the month of October and would have to ask for non-pork meals
at all meals when he came to eat. As a result Hogan submitted a Request for
Selective Diet form, requesting a non-pork meal for the month of November 2014.
Defendant Willson returned the form to Hogan stating: "You are on selected diet
restriction until January. Please resubmit in Janaury." Again Hogan refused to eat
any meals until the matter was corrected. Hogan again had submitted a "Selective
Diet" Form requesting non-pork and Defendant Willson finally corrected the matter
rather than deny it for the months of October, November and December for Defendant

COMPLAINT - 16

Hunter had first corrected the problem.

56.  IDOC SOP 404.02.01.001 mandates that a prisoner be removed from the selective diet program if they miss more than twenty-five percent (25%) of all meals in a given month.

57.  IDOC SOP 404.02.01.001 mandates that a prisoner be removed from the selective diet program if they are documented as partaking in any diet other than the selective diet for which they are signed up for.

58.  IDOC SOP 404.02.01.001 mandates that any prisoner who is removed from a selective diet for non-compliance will not be eligible to participate in the selective diet program for 60 days.

59.  Currently none of the meal options at ISCI or any other IDOC ran Facility are Halal, nor has IDOC implemented any changes as stated before to Plaintiffs.

C.   IDOC's Denial of Religious Practices Unlawfully Burdens Plaintiffs'
     Religious Exercise

60.  Keeping Halal is a central tenet of Islam and a sincerely held belief Plaintiff Hogan. Keepoing halal is a central to the practice of Islam as embodied in the Koran.

61.  IDOC's refusal to provide Halal meals to Hogan burdens his religious exercise by forcing him to consume foods which defile and contaminate his body thereby inhibiting and curtailing his ability to to be spiritually clean.

62.  To be Halal, a food item must derive from religiously acceptable sources, be stored in Halal containers, prepared in a particular manner, and served on tableware that has not contacted non-Halal food. Additionally, meat and dairy products may not be mixed.

63.  Observing Lent and other days of fasting and abstinence is a precept

of the Catholic Church and ensures the times of ascesis and penance that prepares Plaintiff Wolf for the liturgical feasts; they help him acquire freedom of heart and mastery over instincts which are sincerely held beliefs.

64. IDOC's refusal to provide meals to Wolf for the observance of Lent and other days of fasting and abstinence burdens his religious exercise by forcing him to consume flesh meat of warm blooded lard animals, including birds and fowl's on Ash Wenesday and Fridays.

65. Observing Lent and other days of fasting and abstinence requires Wolf to abstain from eating meat fro warm blooded lard animals, birds and fowl's on Ash Wednesday and Fridays during Lent and other Fridays as well.

66. IDOC's dietary policy is an outlier among American Correctional Institutions. The Federal Bureau of Prisons ("BOP") and most state departments of correction offer Halal, Kosher and Lenten Diets to all prisoners with a religious basis for requiring one.

67. The IDOC's dietary policies likewise burden the religious exercise of the Plaintiffs when participating in Selective Diets to meet the needs of their religious requirements, such as when Plaintiff Hogan was denied from a non-pork diet by the provisions of IDOC SOP, which has a zero-tolerance requirement for removing prisoners from a selective diet for non-compliance. These provisions render Plaintiffs' religious exercise impractical and/or impossible.

68. The IDOC is capable of providing Kosher, Halal and Catholic diets to those prisoners such as Plaintiffs, consistent with its compelling government interests, as it currently provides numerous special diets for prisoners in their custody to meet their medical, therapeutic and lifestyle choices.

69.  The IDOC created a Policy (Field Memorandum) in April 1985, which proscribed religious diets, to resolve unconstitutional conditions alleged in a Class Action Lawsuit at ISCI and to comply with a Federal Court Ordered injunction.

70.  IDOC no longer has a provision for religious diets.

71.  Most states and the BOP offer Kosher, Halal and Catholic diets to prisoners while maintiating the same compelling interests.

72.  Plaintiffs have no plain, adequate or complete remedy to redress these wrongs described herein. Plaintiffs have been and will continue to be irreparably injured by conduct of the Defendants unless the Court grants the relief sought.

## V.  PREVIOUS LAWSUITS

73.  Plaintiffs have not filed no other lawsuits dealing with the same facts involved in this action.

## VI.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

74.  Plaintiffs have exhausted their administrative remedies before bringing forth this Complaint and is described above in the Factual Allegations above.

## VII.  CLAIMS FOR RELIEF

75.  RLUIPA authorizes the Plaintiffs to seek declaroty and injunctive relief for Defendants' failure to provide religious and selective diets to Plaintiffs to Plaintiffs in accordance with their religious beliefs.

76.  42 U.S.C. Section 1983 authorizes the Plaintiffs to seek declaratory and injunctive relief, as well as monetary damages for Defendants' failure to provide religious and selective diets to the Plaintiffs who require them to exercise their religious beliefs.

77.  Plaintiffs re-allege and incorporates by reference paragraphs 1-76.

//

COMPLAINT - 19

## FIRST CLAIM FOR RELIEF

78.  Defendants have enacted and/or pursued or acquiesced in the policies and practices set forth above, and engaged in the acts described above regarding the denial of religious meals (Kosher, Halal and Catholic) which violates RLUIPA and the First and Fourteenth Amendment to the United States Constitution as follows.

79.  Defendants do not provide religious meals (Kosher, Halal and Catholic) to Plaintiffs who have requested the meals in accordance with their religious beliefs.

80.  Defendants denial of religious diets constitutes a substantial burden on the religious exercise of the Plaintiffs, and denial of these religious meals is not  the least restrictive means of furthering any compelling interest.

81.  Accordingly, IDOC's refusal to provide these religious practices also violates the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. Section 2000cc ("RLUIPA").

82.  Defendants refusal to provide these religious practices also violates the Free Exercise Clause of the 1st Amendment of the United States Constitution.

83.  Defendants actions inhibit and/or curtail Plaintiffs' religious practices and therefore violates the Free Exercise of Religion Protected Act, Title 73, Chapter 4, Idaho Code (§§ 73-401 thru 73-404).

## SECOND CLAIM FOR RELIEF

84.  Defendants have enacted and/or pursued or acquiesced in the policies and practices set forth above, and engaged in the acts described above regarding the denial of Selective Diets which violates RLUIPA, the First and Fourteenth Amendments to the United States Constitution as follows.

85.  Defendants removal of Plaintiff Hogan from Selective Diets for unfounded non-compliance constitutes a substantial burden on the religious exercise of

COMPLAINT - 20

Plaintiff Hogan, and the denial of his selective diet is not the least restrictive means of furthering any compelling government interest.

86. Defendants removal of Plaintiff Hogan from his selective diet violates RLUIPA, 42 U.S.C. Section 2000cc.

87. Defendants removal of Plaintiff Hogan from his selective diet violated the Free Exercise Clause of the 1st Amendment to the United States Constitution.

88. Defendants removal of Plaintiff Hogan from his selective diet violated the Equal Protection Clause of the United States Constitution.

89. Defendants removal of Plaintiff Hogan from his selective diet violated Free Exercise of Religion Protected Act, Title 73, Chapter 4, Idaho Code (Sections 73-401 thru 73-404) ("FERPA").

<u>CLAIM FOR REASONABLE COSTS AND ATTORNEY FEES</u>

90. Plaintiffs include a claim for costs and reasonable attorney fees available to them and pursuant to 42 U.S.C. Section 1983.

VIII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully pray that this Honorable Court will:

1. Accept jurisdiction over this case, to include supplemental jurisdiction of Plaintiffs FERPA Claims pursuant to 28 U.S.C. § 1367.

2. Declare that Defendants have violated RULIPA by failing to provide religious diets to Plaintiffs who require Kosher, Halal, or Catholic diets to exercise their religious beliefs.

3. Declare that Defendants have violated the First and Fourteenth Amendments to the United States Constitution by failing to provide religious diets to the Plaintiffs consistent with their religious beliefs and protected by the Free Exercise Clause and Equal Protection Clause of the United States Constitution.

COMPLAINT - 21

4.   Declare that Defendants have vioalted FERPA by failing to provide religious diets to Plaintiffs who require Kosher, Halal and Catholic diets to exercise their religious beliefs.

5.   Grant injunctive relief, in the form of mandating Defendants, their officers, agents, employees, subortdinates, successors in office, contracted vendors who may provide food services in any IDOC Facility, and all those acting in concert or participation with them to provide prisoners in their care, custody and control including Plaintiffs, with nutritionally adequate religious diets that meet Federal RLUIPA guidelines.

6.   Grant compensatory, discretionary, general and irreparable damages in the amount of $50,000.00 for each plaintiff against all named Defendants except IDOC.

7.   Grant such additional and further relief, including injunctive relief and an award of attorney fees and cots, as the Court may deem proper under the circumstances.

A BENCH TRIAL IS REQUESTED ON ALL CLAIMS SO TRIABLE.

Respectfully submitted this _4th_ day of August, 2015.


James Hogan, Plaintiff


Andrew J.J. Wolf, Plaintiff

COMPLAINT - 22

VERIFICATION

STATE OF IDAHO          )
                        : ss.
County of ADA           )

    I, James Hogan, have reviewed the above Prisoner Civil Rights Complaint and find it to be true and correct to the best of my knowledge.

DATED: August 4th, 2015.

_____
James Hogan, Plaintiff


STATE OF IDAHO          )
                        : ss.
County of ADA           )

    I, Andrew J.J. Wolf, have reviewed the above Prisoner Civil Rights Complaint and find it to be true and correct to the best of my knowledge.

DATED: August 4th, 2015.

_____
Andrew J.J. Wolf, Plaintiff


Hogan signed and sworn to before me this  4  day of **AUGUST, 2015.**


Wolf  signed and sworn to before me this  4  day of **AUGUST, 2015.**

_____
Notary Public for Idaho
My Commission Expires: 8/10/2020

COMPLAINT – 23