Case No: *1:15-cv-308 BLW* Inmate Name: *Hogan / Wolf*

Date: *1-15-16*      Inmate IDOC#: *67876 / 35408*

Document Title: *First Amended Prisoner Civil Right Comp*

Total Pages: *29*   Inmate Initials Verifying Page Count: *AJJW*

Document(s) *2* of *2*

James Hogan
#67876, ISCI Unit 11
Andrew J.J. Wolf
#35408, ISCI Unit 9
PO Box 14
Boise, ID 83707

Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

oOo

JAMES HOGAN, and ANDREW J.J. WOLF,

       Plaintiffs,

vs.

IDAHO DEPARTMENT OF CORRECTION; KEVIN
KEMPF, JEFF ZMUDA, SHANNON CLUNEY,
SHANE EVANS, HOWARD (KIETH) YORDY,
GARRETT COBURN, LEROY PENEKU, JESSYCA
TYLER, JENANETTE HUNTER, sued in their
official capacities; JEFF KIRKMAN,
DAN COPLAND, JOSH TEWALT, FSO HOUSTON,
FSO S. BONNER, and KATHLEEN WILLSON,
sued in their individual and official
capacities; and their successors in
office,

       Defendants.

Case No. 1:15-cv-00308-BLW

FIRST AMENDED PRISONER
CIVIL RIGHTS COMPLAINT

COMES NOW, James Hogan and Andrew J.J. Wolf, Plaintiffs pro se, in the above entitled action, pursuant to this Court's December 15, 2015 Initial Review Order (Dkt. 11) submits this First Amended Prisoner Civil Rights Complaint and offers the following in support thereof:

## I. INTRODUCTION

The Idaho Department of Correction and its above-named defendants have failed provide plaintiffs with a diet consistent with their religious beliefs. This forces

FIRST AMENDED COMPLAINT - 1

the plaintiffs to violate their core religious believes on a daily basis, all in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, the First and Fourteenth Amendments of the United States Constituiton, and Idaho Code §§ 73-401 thru 73-404, Religious Freedom Restoration Act ("RFRA"). The plaintiffs seek declaratory and injunctive relief, as well ass damages to remedy the defendants' violation of their civil rights under the law, and to ensure that defendants' implement sustainable reforms which guarantee the religious freedom protected by federal law, the United States Constitution, and state law.

## II. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), and supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. § 1367.

2.    Declartory, injunctive relief and damages sought by plaintiffs are authorized by 42 U.S.C. § 2000-3(b) and 20 U.S.C. §§ 2201, 2202, 42 U.S.C. § 1983, F.R.Civ.P. 65 and Idaho Code § 73-402.

3.    Venue is proper in this proceeding pursuant to 28 U.S.C. § 1391, for defendants operate 13 facilities in the state of Idaho, and all events, actions, or omissions giving rise to this complaint occurred in the District of Idaho.

## III. PARTIES

A.    Plaintiffs

4.    Plaintiffs, James Hogan and Andrew J.J. Wolf, are state prisoners who are presently housed at the Idaho State Correctional Institution ("ISCI"), state of Idaho, in the care, custody and control of the Idaho Department of Correction ("IDOC").

FIRST AMENDED COMPLAINT - 2

**B.    Defendants**

5.    Defendant, IDOC, incarcerates the plaintiffs in 1 of 13 facilities across the state of Idaho. According to the 2014 Legislative Fiscal Report, IDOC has an annual budget of approximately $225 million, and receives in excess of $1 million in federal funding. IDOC, is an "Institution" within the meaning of 42 U.S.C. §§ 2000cc-2(a) and 1997, and is correctly named under 42 U.S.C. §§ 2000cc-(a) and 2000cc-5(4)(A)(ii). As such, IDOC is required to provide religious diets for plaintiffs and has failed to do so as set forth more fully below in this First Amended Complaint ("FAC").

6.    Defendant, Kevin Kempf, is the Director of IDOC, and pursuant to Rule 25, F.R.Civ.P, has assumed former IDOC Director Reinke's actions in respect to being legally responsible for the overall operations of the IDOC and each Institution under its jurisdiction during his tenure. Kempf, prior to assuming the position of IDOC Director has acted in the positions within the IDOC as Deputy Director IDOC, Chief of Division of Prisons, Chief of Operations, Warden of PWCC and ICI-O, and a Probation and Parole Officer. It is upon information and belief which plantiffs have obtained through their own investigation the IDOC Director has final approval, implementation and enforcement of all Polices, including the implementation of its Dietary and Religious Policies. These Policies, Policy 403 – Religious Practices, and Diets for Offenders previously contained "Religious Diets" for inmates such as plaintiffs. Kempf and former Director Reinke removed "Religious Diets" from IDOC Policies and Standard Operating Procedures and now forces plaintiffs to eat food that is violates their religious beliefs. Kempf is being sued in his official capacity.

7.    Defendant, Jeff Zmuda, is currently the Cief of the IDOC Prisons Division. He is sued in his official capacity. Prior to assuming his current position as Chief of Prisons he acted as IDOC Deputy Chief of the Division of Prisons. In both positions, Zmuda has approved and implemented Policies and SOP's which directly pertain to issues and claims for relief which plaintiffs are pursuing in this action. Most importantly, plaintiffs have discovered that under SOP 402.02.01.001 ZMuda was responsible for promulgating SOP's to fulfill IDOC Directives and designating persons to serve on the Religious Activities Review Committee ("RARC") who are responsible for the implementation of Religious Activities and religious diets, but chose to remove religious diets from said Religious Activities Policy and not provide any religious diets whatsoever.

8.    Defendant, Shannon Cluney, is currently one of the IDOC Deputy Chief of the Division of Prisons. He is sued in his official capacity. It is upon information and belief that Cluney is responsible for promulgating SOP's to fulfill Directives and designating persons to serve on the RARC who are responsible for the implementation of Religious Activities SOP's and religious diets under RLUIPA.

9.    Defendant, Shane Evans, was in the employ of the IDOC as the IDOC Chief of the Division of Education, Treatment and Reentry. He is sued in his official capacity. It is upon information and belief that Evans approved SOP 404.02.01.001 – Selective, Medial, Special Provision and Infirmary Diets, and failed to implement any religious diets, but rather saw to the removal of them all in violation of RLUIPA.

10.   Defednat, Howard (Keith) Yordy, is the current Warden (Facility Head) of ISCI. He is sued in his official capacity. It is upon information which the

FIRST AMENDED COMPLAINT – 4

plaintiffs have discovered that Yordy is responsible under SOP 403.02.01.001 for ensuring that Staff Members at ISCI adhere to and properly implement said SOP, and is responsible for appointing members of the Religious Activities Oversight Committee ("RAOC") at ISCI. In addition to SOP 403, Yordy under SOP 316.02.01.001 – Offender Grievance Process, he is the final appellate authority for prisoner grievances at ISCI and responded to all of plaintiffs grievances in regards to the matters more fully complained of below.

11.   Defendant, Garret Coburn, is the Deputy Warden of Operations at ISCI. He is sued in his official capacity. Plaintiffs, through their investigation, have found Coburn is responsible for the oversight and operation of the ISCI Food Service and Religious Activities at ISCI. He was also the reviewing authority on certain grievances which plaintiffs had submitted in regards to matters more fully complained of below.

12.   Defendant, Leroy Peneku, is the Deputy Warden of Security at ISCI. He is sued in his official capacity. It is upon plaintiffs investigation and belief Peneku is responsible for the implementation and approval of religious diets at ISCI under <u>Balla, et al. v. Idaho St. Bd. of Corr., et al.</u>, 1:81–cv–1165–BLW (D.Idaho), in which a permanent injunction and Notice of Compliance states he is responsible for the implementation of religious diets. (**Id.** Dkt. 133, Exhibit A, Court Order No. 1, p.12) and with other defendants saw fit to remove the religious diets, all in violation of RLUIPA and described more fully below.

13.   Defendant, Jessyca Tyler, is the Dietician for IDOC. She is sued in her official capacity. It is upon information and belief that Tyler is responsible for the implementation for all Food Service Menu's and meals which are served at any of the 13 IDOC facilities and has failed to implement religious

FIRST AMENDED COMPLAINT – 5

diets for plaintiffs despite having received federal USDA federal monies, all
violation fo RLUIPA.

14. Defendant, Jeanette Hunter, is the Food Service Manager ("FSM") at
ISCI. She is sued in her official capacity. It is upon information and belief
Hunter is responsible for the ovesight and managment of ISCI Food Service, to
include the offering of religious diets, and non-pork meals for plaintiff Hogan.
Hunter also was one of the individuals who responded to plaintiffs grievances
in the matters complained of more fully below.

15. Defendant, Jeff Kirkman, was an employee of IDOC, and a member of the
RARC. It is upon information and belief that Kirkman's duties and responsibilities
included reviewing RAOC recommendations, reviewing and updating IDOC SOP's, and
advising the Deputy Chief of Prisons on issues relating to religious activities.
Kirkman knew or should have known that the Religious Policy he promulgated as
a member of the RARC would violate plaintiffs clearly established rights and
RLUIPA by failing to provide religious diets to inmates such as plaintiffs. He
is sued in his official and individual capacity.

16. Defendant, Josh Tewalt, is an employee of IDOC as Budget and Policy
Administrator. He is sued in his official and individual capacities. It is upon
information and belief that Tewalt is responsible for reviewing RAOC
recommendations, updaiting IDOC Policy and SOP's and advising the Deputy Chief
of Prison (Defendant Cluney) on issues relating to Religious Activities. Tewalt
knew, or should have known, that the Religious Policy he promulgated as a member
of RARC would violate the Plantiffs' clearly established rights under RLUIPA by
failing to provide religious diets.

17. Defendants, FSO Houston and FSO S. Bonner, are employees of IDOC as
FIRST AMENDED COMPLAINT - 6

Food Service Officers at ISCI. They are both sued in their individual and official capacities. It is upon information which plaintiffs have discovered that both Hunter and Bonner were responsible for terminating Plaintiff Hogan's non-pork meal that partially met his Halal religious dietary needs for approximately 6 weeks resulting in damages to him as set forth more fully below.

18.   Defendant, Kathleen Willson, is an employee of IDOC at ISCI. She is sued in her individual and official capacities. It is upon information which plaintiffs have obtained Willson is responsible for having interfered with Plaintiff Hogan's non-pork meal for approximately 6 weeks which partially met Halal dietary needs resulting in damages to him as set forth more fully below.

19.   Defendants Lead Counsel is: Mark Kubinski, Deputy Attorney General – Corrections Section, 1299 N. Orchard St., Ste. 110, PO Box 83720, Boise, ID 83720-0018.

### IV. FACTUAL ALLEGATIONS

20.   This action arises under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, and under 42 U.S.C. § 1983 to remedy the deprivation, of federal rights guaranteed by the First, and Fourteenth Amendments under the Constitution of the United States, and under color of state law as set forth more fully below.

21.   In **Balla, et al. v. Idaho St. Bd. of Corr., et al., 595 F.Supp. 1558 Case No. 1:81-cv-1165-BLW (D.Idaho)**, set forth in its Memorandum Opinion, Findings of Fact, Conclusions of Law, and Order regarding certain conditions of confinement to be made at ISCI. As a direct result of this decision on November 1, 1984, the Plaintiff Class and defendants on April 29, 1985, entered into a Notice of Compliance (Dkt. 133) (hereinafter "Compliance Plans") which set forth the terms

FIRST AMENDED COMPLAINT - 7

of the permanent injunction that would be put into place. One of these was setting forth "Religious Diets" to be made available to IDOC Inmates. (**Balla,** Dkt. 133, Exhibit A, Court Order No. 1, page 12, ¶4. A-F.) This was done by issuing a Field Memorandum.

22. Over the years since the defendants enactment of the Balla Court's permanent injunction and Compliance Plans IDOC Officials have chose to revise their Policies concerning "Religious Diets" and revised the Field Memorandum to be called; "Policy and Procedures" ("P&P"), "Directive No." ("Dir. No."), and "Standard Operating Procedure" ("SOP").

23. Since their revision of policy as described above, Defendants have implemented: 1) Policy 403, Verson 2.0 – Religious Practices, adopted 6-7-1985; 2) Field Memorandum ISCI Control Number 402.02.01.001 (ISCI FM) – Religious Activities, Adopted  9-1991; 3) 404.02.01.003, Version 3.0 – Diets for Offenders: Selective, Medical, Special Provision and Infirmary, Adopted 5-1-1996; 4) Policy No. 404 – Food Service; 5) Directive No. 404.02.01.001 – Food Service Management, Adopted 3-5-2001; and 6) Directive No. 404.36.04.003 – Modified Diets, Originally Adopted 6-1-1995. In defendants' action of adopting these FM's, Policies, SOP's and Directives, they have **completely eliminated Religious Diets,** all in violation of RLUIPA and the Balla Court's Order as set forth in the Compliance Plans, and have refused to offer any religious diets to plaintiffs and those similarly situated.

24. Since the implementation of the Balla Compliance Plans, the Balla Court has repeatedly stated that individual lawsuits would better address the <u>**current**</u> conditions of confinement opposed to seeking "little to expending significant resources to litigate the continued efficacy of old compliance plans tied to

FIRST AMENDED COMPLAINT - 8

conditions that existed over 25 years ago." (**Balla**, Dkt. 780). This is reasoned
by Judge Ryan who originally authored **Balla** when he stated, "that all issues which
have been heretofore raised in this action, except the issue of overcrowding,
should be hereby, closed and **will not be re-litigated** in this action" in his 1986
Order. Then again the Balla Court when issuing its Memorandum Decision and Order
on the Balla Plaintiffs' Motion for Clarification of the Court's Order of December
18, 2007 (Dkt. No. 729), the Balla Court ordered that the compliance plans adopted
by the Court in Balla I and incorporated into Balla II are enforceable through
contempt motions, but also stated, "As previously set forth herein, the compliance
plans **are not** subject to re-litigation." (Dkt. 768, at p.13) (emphasis added).

25.  Plaintiffs here would understand their individual case as set forth
herein this First Amended Complaint is appropriate. Additionally, the Religious
Land Use Institutionalized Persons Act (RLUIPA) was not in effect at the time
of the Balla Compliance Plans concerning "Religious Diets", and therefore is
appropriately addressed in this case before the Court.

26.  Defendants having offering religious diets in compliance and then
choosing to eliminate them totally violates plaintiffs federal rights. Defendants'
continuing modifications to their religious and dietary policies violates RULIPA
by burdening the religious exercise of plaintiffs who have sought religious diets.
This is nothing more than attempting to avoid liability in perpetuity by
continually modifying a policy which is challenged in litigation, such as here.
Another way to put it is creating a "moving target".

27.  The substantial burden that defendant's policies imposed on the
Plaintiffs by refusing them a religious diet, **are not** necessary to achieve any
compelling government interests.

FIRST AMENDED COMPLAINT - 9

A.    Defendants Do Not Provide Any Religious Diets

28.    Defendants do not provide any religious diets to any of its inmates, including prisoners.

29.    A religious diet for example for the purposes of this case, "Kosher", for those who practice the Jewish faith; "Halal" for those who practice the Islamic or Muslim faith; and "Catholic" for those who practice the Roman Catholic Faith or Orthodox Faith.

30.    For those individuals who practice Jewish, Islamic or Muslim faith they require a diet which contains no pork products whatsoever, to include the trays, serving and eating utensils used, cooked separately, washed separately from that of regular meals or as some Prisons call "common fare". These kosher and halal meals must be prepared in accordance with the tenants of the faith. Some for instance are, live animals must be slaughtered in a manner with the tenants of the faith and must not be killed or processed where pork products are also processed. The meal must be served separately from that of common fair as well.

31.    For those who are practicing Roman or Orthodox Catholics they only require during Lent and Advent a religious diet which consists of no meat, on Ash Wednesday and every Friday during lent which ends on Easter Sunday. For Advent it is only four (4) Fridays during the Christmas Season. The only other requirement other than no meat on those specific days is that they be served one (1) meal which contains anything other than Flesh meat, which is the flesh of warm-blooded animals, including birds and fowl's. This would be fish, snails, frogs, oysters, shrimps, and crabs, as well as milk, butter, cheese, eggs. Lard and the fat of any animal may be used in cooking and seasoning. On fast days, as identified above

FIRST AMENDED COMPLAINT - 10

only quality, not quantity, of food is regulated.

32. Defendants had provided religious diets which met the requirements of those religious diets identified above, but then defendants chose to eliminate them by changing the policy by implementing a policy regarding "Selective Diets", which contain four (4) options: 1) lacto-ovo (no meat); 2) vegan (no animal products); 3) Healthy Choice (low-fat and low-sugar); and 4) no-pork. These types of diets **do not meet** that of a Kosher or Halal diet for they are not prepared, or served, as the tenants of the faith for those types of diets are required. As for meeting the requirements of Roman or Orthodox Catholic faith these diets do not meet their requirements either for defendants force you to do one of these four diet options for a whole month rather than just on those particular observance days of fasting as required by the faith. Additionally, fish is offered on the IDOC common fair menu only once every 4 weeks on Wednesday and not any other days for this faith.

33. Additionally, non-pork trays for plaintiff Hogan are not served separate from that of the pork meals and are also served out of the same diet window, the pans, trays he eats from and serving utensils and eating utensils are all washed with that of the common fare meals.

34. Defendants do not even come close to meeting the standards required to serve Halal or Kosher meals at ISCI or any other IDOC ran facility. A good example would be that of the Federal Prisons (BOP) which implemented separate kitchens which prepare, serve and wash, all pans and trays that are used to prepare the meal and eat from it.

//

//

FIRST AMENDED COMPLAINT - 11

B.   Plaintiff Hogan

35.   On or about 10/10/14, Hogan submitted a IDOC Concern Form to VRC ISCI Chaplin J. Truiillo requesting a Halal religious diet. This was denied and Hogan submitted a timely greivance in which he pointed out that IDOC refuses to offer Halal meals which forces him to eat food that violates the fundamental tenents of his faith on a daily basis, all in violation of RLUIPA. In addition Hogan also pointed out that IDOC's refusal to provide him with his requested religious diet irreparably harms him by substantially burdening his right to exercise his sincerely held religious beliefs. He went so far as to address that most states and the Federal BOP provide Kosher and Halal meals in spite of the cost, so IDOC has no compelling interest in outright denial of religious diets to Inmates who require them when requested.

36.   On 11/6/14, defendant Hunter responded to Hogan's grievance by stating, "IDOC is currently working on policy changes to include religious meals but for now inmates can select from the meal options that most closely fit their dietary requirements."

37.   On 11/13/14 Defendant Coburn modified the grievance by stating, "We are aware of the religious needs of inmates in regards to dietary requirements and are considering several options. The policy will be updated when these are available. We are unaware of a time frame at this time."

38.   Hogan appealed the grievance by stating that the Defendant Corburn's response was unacceptable for every day they deny him a religious diet, they are causing him irreparable injury due to not providing religious diets which forces him to eat food that violates his body and basic religious beliefs. "Being forced to defile my body like this has eternal consequences for me. That you haven't

FIRST AMENDED COMPLAINT - 12

got any time frame for implementing a religious diet program causes me great dismay. Please implement a religious diet program, that includes halal, immediately to help remedy the irreparable harm you inflict upon me daily. You can worry about all the arbitrary details of policy later and implement religious diets now for myself  and those similarly situated."

39.  On 12/10/14, defendant Yordy denied Hogan's grievance by stating, "Staff are following the policy in allowable meals. All offenders must chose one of the existing menu options of the meal that suits their desire for health and religious  beliefs. At this time, the department does not offer what you are asking for."

40.  Despite defendant Hunter having stated that they are working on offering Religious Diets they have not done so to date. Hogan even sent a Concern Form to H. Smith who works with 3 Oaks Ministries who provides chapel services for IDOC and was informed by her that they still did not have any policy implemented as of yet. This too was over a year after Hogans Grievance.

41.  Again, Halal meals must be derived from religiously acceptable sources, be stored in Halal containers, prepared in a particular manner, and served on tableware that has not contacted non-halal food. In addition, meat and dairy products may not be mixed. The meat must be pork-free and slaughtered to Koranic Law, which is that similar to the way Kosher meats are prepared.

42.  Despite not offering Religious Diets, defendants have elected to accommodate Hogan and other inmates to practice Ramadan each year. as such, this requirs Hogan ond others similarly situated to not eat during daylight hours and requires them to eat their meals prior to sunrise and after sunset. As a result, ISCI Food Servcie provided Hogan, and others similarly situated, their evening

FIRST AMENDED COMPLAINT - 13

meal at a designated time in disposable trays along with their breakfast and a
sack lunch. All of which are to be the same caloric count and that other inamtes
receive. This was not the case.

43.   Defendant Hunter chose to have Hogan and other participants of Ramadan
served on the weekends only a 4 oz. bowl of dry cereal opposed to the actual
meal that they are to receive on Saturday of eggs, potatoes, cereal, bread,
butter and milk, and on Sunday, biscuits, gravy, potatoes, dry cereal and a
fruit bar. For lunch on Saturday and Sunday they would receive a piece of fruit.

44.   Hogan sent defendant Hunter a Concern Form regarding that he and others
participating in Ramadan were not receiving the proper meals as everyone else.
Hunter replied by stating, "The Ramadan Menu is not the same as the hot meals.
You elected to sign up for observance of Ramadan. The meal is served cold becuase
Pendyne is not open when you eat. I have increased the cereal portion every day."

45.   Again, defendants do not provide "religious diets" yet will provide
a "Ramadan Menu" which is not part of any IDOC Policy, Procedure, SOP, Directive
or Slective Diet. Again, a moving target as demonstrated above and all in violation
of RLUIPA.

46.   On 7/9/14 Hogan sent defendant Tyler a Concern form regarding the
dietary requirements of the Ramadan meals for he believed they were not being
met as to dietary standards, as well as hot foods being hot and cold foods being
cold to them that way. The response was, "Please discuss this with FSS Hunter.
Thank you."

47.   Hogan with another Muslim prisoner who works in ISCI Pendyne, presented
tpo defendant Hunter a proposal on ar about 6/6/2015, prior to Ramadan, to see
if they could get permission to come to Pendyne at approximately 4:30 am. (prior

FIRST AMENDED COMPLAINT - 14

to the 5:00 am. count) and all those who were partaking in Ramadan would be able to eat their breakfast prior to sunrise and also get their sack lunch at that time as well. This was also due to the fact that the morning breakfast meal was already to be served at that time. Defendant Hunter said she had no problem with this provided security would authorize it. Upon Hogan having spoke with Chaplian Trujillo, he said he would take the matter up with security. Upon doing so it was denied.

48.   Despite Hogan having requested early feeding for himself and others who were participating in Rmadan, it has been discovered that this is permitted at ICI-O and ISCC Facilities. Additionally, Prisoners were also permitted to wear their Kfis (prayer caps) at all times during Ramadan.

### 1.  Hogan was wrongfully removed from a Selective Diet

49.   Despite Hogan not being provided a Halal meal, the closest thing to it is a non-pork meal from the Selective Diet Menu. It still does not meet Hogan's religious dietary needs, or beliefs.

50.   Defendants Houston and Bonner have continually stopped Hogan's non-pork selective diet for up to 6 weeks on one occassion. As a result Hogan refused to defile his body with anything due to their negligent act(s) in doing so

51.   It is upon information and belief that defendants Houston and Bonner have a duty to ensure that line-servers are serving correct Selective Diet Meals to inmates. Hogan on 10/4/14 requested a non-pork meal at the diet window which also consists of common fair (mainline) trays being served and contaminates Hogans non-pork meal for the tray is moved down the line by the pork products. Hogan requested a non-pork meal and the line-server told him to take a mainline tray for no pork products were being served. Selective Diet trays are color coded.

FIRST AMENDED COMPLAINT - 15

As a result of Hogan having been told to take a mainline tray he was informed
on or about 10/5/14 he was not eligible to sign up for a non-pork meal until the
month of January 2015.

52.   As a result of Hogan receiving a notice that his non-pork meal was
terminated he sent a Concern Form to defendant Houston regarding her actions in
terminating his non-pork meal. Hogan further explained to her, "I always ask for
non-pork - They tell me its a mainline, we have went through this before. I have
to take it or go hungry. If you try to take me off my religious diet I will file
papers in court and will not eat until its cleared up." Defendant Houston replied
by informing Hogan he needed to speak with defendant Bonner as he was the one
who had removed him from his diet, and claimed she had nothing to do with the
matter.

53.   Hogan then sent Defendant Coburn a IDOC Concern Form requesting again
if he could be put on a Halal diet per his religious beliefs. Defendant Willson
answered for Coburn informing Hogan tht he was on selective diet restriction until
January 2015, and he could turn in a "Request for Selective Diet" form in December
2014. As a result of this matter, Hogan refused any meals for they would defile
his body for it violated the tenets of his religious beliefs.

54.   On 10/10/14 Hogan submitted to Defendant Willson a IDOC Concern Form
explainitng to her again that he was on non-pork selective diet due to his
religious beliefs as a Muslim and was taken off due to ISCI Pendyne line-servers
told him to take a mainline tray for it was the same as non-pork. Defendant Houston
had observed this and terminated his diet. Hogan requested if she would fix the
matter. On 10/15/14, defendant Hunter responded to Hogan's Concern Form and told
him the matter was corrected for the month of October 2014 and he would have to

FIRST AMENDED COMPLAINT - 16

ask for non-pork meals at all meals when he came to eat.

55.  As a result of defendant Hunter having corrected the problem Hogan had gone without any meals for approximately 15 days. Hogan also then submitted a Selective Diet Request for non-pork for the month of November 2014, and again defendant Willson returned the form to Hogan stating, "You are on selective diet restriction until January. Pleas resubmit in January."

56.  Again, Hogan refused to eat any meals until the matter was corrected. Hogan again submitted a Selective Diet form requesting non-pork and defendant Willson finally on 11/17/14 approved Hogan for non-pork for the month of December 2014 rather than require him to wait until January 2015. As a result Hogan was deprived a proper non-pork free meal for approximately 58 days and wouldn't eat any tray that was contaminated by pork products due to his tenants of faith and religious beliefs.

57.  In October 2014 when Hogan was having problems with Food Service and in his attempt to get a religious diet he approached Balla Class Representative Berry Searcy regarding Religious Diets, and informed him that IDOC was not providing them as requird under Balla. Searcy informed Hogan that they (Balla Class Representatives and Class Counsel) were not addressing them at this time. As a result this left Hogan on his own to pursue the matter individually.

58.  Currently IDOC SOP 404.02.01.001 ("SOP 404") mandates that a inmate be removed from the selective diet program if: 1) they miss more than 25% of all meals in a given month; 2) the inmate be removed from the selective diet program if they are documented as partaking in any diet other than the selective diet they are signed up for; and 3) if an inmate is removed from a selective diet for non-compliance will not be eligible to participate in the selective diet program

FIRST AMENDED COMPLAINT - 17

for 60 days. Again, this policy is nothing more than attempting to avoid liability

in perpetuity by continually modifying a policy which is challenged in litigation,

such as here. The "moving target" as described before, by creating a substantial

burden on Hogan for the religious exercise he is attempting to do, and is not

in furtherance of a compelling governmental interest.

    59.  Defendants have implemented regulations which substantially burdens

Hogan's exercise of religion as demonstrated above, and the defendants bear the

burden of persuasion on all other elements as set forth in RULIPA, 42 U.S.C. §

2000cc-2(b).

C.   Plaintiff Wolf

    60.  On or about 10/25/14 Plaintiff Wolf, who is a practicing catholic, wished

to practice the precepts of the Catholic Church and submitted a IDOC Concern Form

to defendant Tyler requesting tht a Lent Meal for himself and other practicing

Catholics who are similarly situated to either have a ovo-lacto or vegan meal

for Ash Wednesday and each Friday during Lent, and provide a fish dinner which

was currently on the IDOC Cycle Menu. Tyler responded on 10/30/14 stating that

a Lenten Diet is not one that is authorized by policy and he could choose from

one of the selective diets offered by IDOC Policy.

    61.  Wolf then on 10/29/14 submitted a IDOC Concern Form to VRC ISCI Chaplain

Trujillo requesting for 2015 a Lent a menu for Ash Wednesday and 6 Friday's as he

did in his Concern to defendant Tyler. Trujillo asked Wolf to make an appointment

with him. Wolf complied and met with Trujillo along with one other ISCI Prisoner,

David Morgan, #69215, who was also requesting a religious diet of Kosher meals.

Neither were given any type of resolution to the matter by VRC Chaplain Trujillo.

FIRST AMENDED COMPLAINT - 18

62.  On 11/24/14 Wolf filed a timely grievance requesting a religious diet
for 2015 Lent for himself and those similarly situated, as was previously addressed
in his Concern to defendant Tyler. Defendant Hunter on 11/25/14 replied as the
Level 1 - Initial Responder stating - "IDOC is currently working on policy changes
to include religious meals but for now inmates can select from the meal options
that most closely fit their religious dietary requirements. Currently the options
can be selected from the selective diet form." Defendant Coburn as Level 2 -
Reviewing Authority responded by stating - "In addition to the information from
Ms. Hunter, you may choose to remove the meat from your meal (mainline or selective
diet) on the days that you have listed.

63.  It is upon information and belief that defendant Coburns comments of
instructing Wolf "to remove the meat from your meal (mainline or selective diet)
on the days that you have listed." is in violation of well established IDOC Policy
217, Ethics Standards and Conduct, and the free exercise clause of the First
Amendment by substantially burdening a sincerely held religious beliefs as set
forth in **Koger v. Bryan**, 523 F.3d 789, 802-03, (7th Cir.2008) in where the Court
made reference to **Hernandez v. Comm'n of Internal Revenue**, 490 U.S. 680, 699
(1989).

64.  Wolf on 12/1/14 field a timely grievance appeal which stated - "IDOC's
continued failure to provide a religious diet for prisoners violates RLUIPA. Level
2 response is indicative to the IDOC's view that the burden here falls on me.
In fact, IDOC must feed us & provide us a diet consistent with our religious
needs. We don't get time to pick the meat out of our food, but neither should
we have to. It's extremely insensitive to suggest so. A lent diet can be
accommodated using current, in stock, menu items. Failing to do so for lent is
FIRST AMENDED COMPLAINT - 19

irrepable injury to myself and others & provides no greater burden on IDOC than the no-pork changes already occasionally done. The Level 1 response is that IDOC is making policy changes regarding religious meals. I believe that myself and other prisoners who are requesting religious meals (Kosher, Halal, Lenten, others) should be permitted to participate in these Policy?SOP changes, not just the IDOC Administration, so as to ensure that the Policy/SOP meets myself and those similarly situated needs, regarding religious diet meals. You already accomidate the Muslims for Ramadan with IDOC menu so you can do likewise for 24 lenten meals."

65.  Defendant Yordy on 12/15/14 responded at the Level 3 – Appellate Authority– stating – "We will attempt to make a partial accommodation to your request. You may eat Mainline for these two months but you must declare beforehand which of the other 4 meals you will be eating for Ash Wednesday and the seven Friday's. It can be a combination of the five meals for the eight days but we can't make a specific meal every Friday, such as Fish. You may obtain a menu from food service and calculate what the meals will be on those days and let us know accordingly. You and likely others making the same request are not going to be able to simply decide on those days which of the other four you want. Food service has a plan for a specific number of meals for each diet and prepare accordingly."

66.  Currently despite Wolf's attempts to have fish served as as as a substitute on Ash Wednesday and the Friday's during Lent through Good Friday as the main course of dinner has been denied. This is despite the fact that Wolf had given defendants an option which **was not** a substantial burden on their part, and they have failed to demonstrate a furtherance of a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest for fish was a readily available menu item.

FIRST AMENDED COMPLAINT – 20

67.  Under Plantiff Wolf's Catholic Faith, the Fourth Precept to the Catholic Church sets forth the days of fasting on days of abstinence. A day of abstinence is on Fridays which he is not allowed to eat flesh meat, including meat soup and gravy. Flesh meat is the flesh of warm-blooded animals, including birds and fowl's. Fish, snails, frogs, oysters, shrimps and crabs may be eaten on abstinence days, as well as milk, butter, cheese, eggs. Lard and the fat of any animal may be used in cooking and seasoning. On an abstinence day unless it is also a fast day, only quality, not the quantity, of food is regulated.

68.  Here, Wolf only has sought defendants to offer him and other practicing Catholics the opportunity of a "Religious Diet" that meets the above precepts of the Church by offering them a Catholic Religious diet on those described days above with the menu items that are currently available. This is no burden to the defendants to create a "Religious Diet Policy" which conforms to that described herein and with what they already offer on current menu items that are provided between the mainline (common fair) menu and that of the selective diet menu.

69.  Defendants currently provide a Ramadan Menu for Muslim inmates during Ramadan with what items are currently in the Kitchen inventory for current menu items, so it is not burdensome for defendants to do the same for Wolf and other Catholics.

70.  Defendants also stated that they were going to implement "Religious Diets", and a year later  have failed to do so.

71. Wolf and Plaintiff Hogan again on December 22, 2015 asked Balla Class Rep.  Searcy what   they were going to do about Religious Diets as was set forth in the Balla Compliance Plans. Searcy informed both of them that they were aware of the matter, but its like most issues in Balla, things move slow like molasses

FIRST AMENDED COMPLAINT - 21

and is not currently being addressed.  Again, Plaintiffs have done what the Balla
Court had instructed to do by filing individual cases addressing those issues
that were previously set forth in Balla, with current conditions and facts, opposed
to rehashing old compliance plans that are out of date and is a pre-PLRA post-
judgment and order, and this case would fall under the PLRA as well as RLUIPA
which was not in place until the year 2000.

72.   Defendants have implemented regulations which substantially burdens
Wolf's exercise of religion as demonstrated above, and that defendants' bear the
of persuasion on all other elements as set forth in RULIPA, 42 U.S.C. §2000cc-2(b).
Here, defendants have denied Wolf's request for a Lenten religious diet, and his
religious group has some dietary restrictions as identified above. The RULIPA
has been violated. Prison officials have failed to show that policy was used in
furtherance of a compelling governmental interest, or the least restrictive means
of furthering  that interest.

D.   IDOC's Denial of Religious Diets Unlawfully Burdens Plaintiff's
     Religious Exercises

73.   Contrary to the Court's Initial Review Order, (Dkt. 11, p.2), Inamtes
such as plaintiffs **are** **not** provided religious diets by applying to the Religious
Activities Oversight Committee (RAOC) at ISCI. At one time religious diets were
offered through the Deputy Warden of Security and the Chaplain. (Balla, Compliance
Plans, Dkt. 133, Exhibit A, Court Order No. 1, pg.12, para. 4. A-F). Defendants
have eliminated all religious diets by avoiding liability in perpetuity by
continually modifying a policy which is challenged in litigation, such as here.
The "moving target" as demonstrated previously above.

FIRST AMENDED COMPLAINT - 22

74. Keeping Halal is a central tenet of Islam and a sincerely held belief by Plaintiff Hogan. Keeping Halal is a central tenet of Islam as embodied in the Qur'an.

75. For a meal to be Halal, a food item must be prepared in a particular manner, and served on tableware that is not contacted non-Halal food. Here, the defendants serve Hogan's non-pork meal with those that are pork. At time they have placed pork products on his tray and he has made them aware of it and they just remove the item from the tray. Despite the fact it has already contaminated his meal and the tenets of his faith. Defendants also serve his meals out the serving window of those that are pork, again contaminating his meal. The trays he eats from are washed with those that have pork on the, as well as the serving dishes and flatware. Halal meals must be prepared separately, all cooking pans, trays that he meal is served on, serving and eating utensils are to be washed separately as well. This is no different than that of a Kosher kitchen that the Federal BOP would have.

76. For Plaintiff Wolf, observing Lent, Advent and other days of fasting and abstinence is a precept of the Catholic Church and ensures the times of of ascesis and penance that prepares him for the liturgical feasts, and help acquire freedom of heart and mastery over his instincts, all which are sincerely held belief.

77. IDOC's detary policies likewise burden the religious exercise of the plaintiffs by being forced to participate in "Selective Diets", and fails to meet their required needs when defendants had created a Policy (Field Memorandum) in April 1985 which proscribed religious diets in order to resolve unconstitutional conditions of alleged conduct in a Class Action Lawsuit at ISCI, and further to

FIRST AMENDED COMPLAINT - 23

comply with a Federal Court Ordered Injunction. IDOC no longer has a provision for religious diets.

78. Most states and the BOP offer religious diets, Kosher, Halal and Catholic, while maintaining the same compelling interests.

79. As the Seventh Circuit recently set forth in **Schlemm v. Wall**, 784 F.3d 362 (7th Cir. 2015), has noted that recent U.S. Supreme Court cases of **Holt v. Hobbs**, 135 S.Ct. 853 (2015) Which involved restrictions on a Muslim prisoner who wanted to wear a beard, and **Burdwell v. Hobby Lobby**, ___ S.Ct. ___ (___), "articulate a standard mush easier to satisfy" than the previous substantial burden test set forth in **Eagle Cove v. Woodboro**, which had been used by correctional facilities to defend against RLUIPA claims.

80. The Supreme Court stressed in **Holt** that the prison system has the burdens of production and persuasion on the compelling-interest and least-restrictive means defenses. In the Ninth Circuit, The RLUIPA requires the government to meet a higher burden of proof than the rational basis standard of **Turner v. Safely**, 482 U.S. 78 (1987), see, Constitutional Rights of Prisoners, 9th Ed., by John W. Palmer, §7.6, p.152, ¶4. Defendants have not met that burden in this case presently before this Court.

V. OTHER PENDING ACTIONS

81. Plaintiffs have no other pending actions regarding this matter, but are aware of other related litigation which is relevant to this case and is, **David Morgan, v. IDOC, et al.**, 1:15-cv-00062-CWD (D.Idaho) which just survived Summary Judgment, and **USA v. Secretary, Florida Dept. of Corrections, et al.**, **Case No. 1:12-cv-229858-PAS (S.D. Floridia)**, and 11th Cir. Case No. 14-10086-D.

//

FIRST AMENDED COMPLAINT - 24

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

82.  Plaintiffs have fully exhausted their administrative remedies as set forth above, Plaintiff Hogan (Grievance No. II 140001213) and Plaintiff Wolf (Grievance No. II 140001282).

## VII. CLAIMS FOR RELIEF

83.  Plaintiffs reallege and incorporate by reference herein paragraphs 1-82.

## FIRST CLAIM FOR RELIEF

84.  Based upon the facts set forth above, Plaintiffs assert that defendants, have enacted and/or pursued or acquiesced in a policy, practice and custom set forth above, have engaged in the acts described above regarding not providing religious diets for plaintiffs, when having received federal monies, which has resulted in a violation of RULIPA, the First and Fourteenth Amendments to the Constitution of the United States. Plaintiffs seek declaratory and injunctive relief, and monetary damages against defendants except IDOC.

## SECOND CLAIM FOR RELIEF

85.  Based upon the facts set forth above, Plaintiff Hogan asserts that defendants, Houston, Bonner and Willson have enacted and/or pursued or acquieced in a policy, practice and custom set forth above, have engaged in the acts described above regarding wrongfully terminating his non-pork diet, which has resulted in a violation of RULIPA, the First and Fourteenth Amendments to the Constitution of the United States. Plaintiff Hogan seeks declaratory and injunctive relief, and monetary damages as well.

//

//

FIRST AMENDED COMPLAINT – 25

## THIRD CLAIM FOR RELIEF

86.   Based upon the facts set forth above, Plaintiff Wolf asserts defendant Coburn has enacted and/or pursued in violating a policy, practice and custom set forth above by engaging in the act of violating Wolf's right to free exercise of his religion by telling him to remove the meat from his meal, which has resulted in a violation of the First and Fourteenth Amendments to the Constitution of the United States. Plaintiff Wolf seeks declaratory and injunctive relief and monetary damages as well.

## FOURTH CLAIM FOR RELIEF

87.   Based upon the facts set forth above, Plaintiffs assert that defendants have enacted and/or pursued or acquiesced in a policy, practice and custom set forth above, and engaged in actions inhibited and/or curtailed Plaitniffs religious practices and therefore violated the Free Exercise of Religion Protected Act, Title 73, Chapter 4, Idaho Code (§§ 73-401 thru 73-404), and seeks delcaratory and injunctive relief, and monetary damages.

### VIII. CLAIM FOR REASONABLE COSTS AND ATTORNEY FEES

88.   Plaintiffs include a claim for costs and reasonable attorney fees available to them and pursuant to 42 U.S.C. Section 1983.

### IX. PRAYER FOR RELIEF

Based upon the facts set forth above, the named Plaintiffs request this Court to:

1.   Accept jurisdiction over this case, to include supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.   Grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 in favor of plaintiffs declaring that defendants have:

FIRST AMENDED COMPLAINT - 26

a)    Violated RLUIPA by failing to provide religious diets to the Plaintiffs as demonstrated above;

b)    Failed to provide religious diets to the Plaintiffs consistent with their religious beliefs under the Free Exercise Clause of the First Amendment and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States;

c)    Failed to provide religious diets to the Plaintiffs consistent with their religious beliefs under the Free Exercise of Religion Act (FERPA), Title 73, Chapter 4, Idaho Code;

d)    Defendants Houston and Bonner have violated RLUIPA, the First and Fourteenth Amendments of the Constitution of the United States, when wrogfully terminating Plaintiff Hogan's non-pork diet;

e)    Defendant Coburn had violated Plaintiff Wolf's right to free his religion under the First Amendment of the Constitution of the United States when he told Wolf to remove the meat from his meal;

f)    that defendants have imposed a substantial burden on the religious of Plaintiffs religion, and have failed to demonstrate the furtherance of a compelling govermental interest in the least restrictive means of furthering that compelling interest, with the burden of persuasion lying upon defendants in accordance with 42 U.S.C. Section 2000cc-2(b);

3.    Issue injunctive relief on behalf of Plaintiffs Hogan and Wolf, pursuant to Rule 65, of the Federal Rules of Procedure, ordering defendants to:

a)    Have defendants, their officers, agents, employees, subordinates, successors in office, contracted vendors who may provide any food services to any IDOC Inmate, and all those acting in concert or participation with them to

FIRST AMENDED COMPLAINT - 27

provide inmates in their care, custody and control including Plaintiffs, with nutritionally adequate religious diets that meet Federal RLUIPA guidelines;

      b)    That defendants are required to implement a Religious Diets Policy that meets and conforms to RLUIPA, and that plaintiffs will be permitted to participate in the writing of said Religious Diet Policy and Procedures in concert with defendants, with the Court having final approval of it.

      4.    Grant nominal, compensatory, discretionary, general and irreparable damages in the amount of $50,000.00 for each day that Plaintiff Hogan went without a non-pork meal, approximately 51 days due to defendant Houston and Bonner's acts;

      5.    Grant nominal, compensatory, discretionary, general and irreparable damages in the amount of $50,000.00 against defendant Coburn;

      6.    Grant nominal damages for each day in the amount of $50,000.00 for each day that Plantiffs Hogan and Wolf have been denied a Religious Diet in accordance with those guidelines that the federal BOP and approximately 38 states use in providing a Religious Diet such as that they have requested, except Defendant IDOC, and;

      7.    Grant any further relief that justice may so permit.

A BENCH TRIAL IS REQUESTED ON ALL CLAIMS SO TRIABLE.

Respectfully submitted this 15th day of JANUARY, 2016.

_____

James Hogan, Plaintiff

_____

Andrew J.J. Wolf, Plaintiff

VERIFICATION

STATE OF IDAHO      )
                    : ss.
County of ADA       )

I, James Hogan, have reviewed the above First Amended Prisoner Civil Rights Complaint and find it to be true and correct to the best of my knowledge.

DATED: January _15_, 2016.                     _____
                                                James Hogan, Plaintiff


STATE OF IDAHO      )
                    : ss.
County of ADA       )

I, Andrew J.J. Wolf, have reviewed the above First Amended Prisoner Civil Rights Complaint and find it to be true and correct to the best of my knowledge.

DATED: January _15_, 2016.                     _____
                                                Andrew J.J. Wolf, Plaintiff


Hogan signed and sworn to before me this _15_ day of _January_, 2016.

Wolf signed and sworn to before me this _15_ day of _January_, 2016.

                                               _____
                                               Notary Public for Idaho
                                               My commission expires: _4/16/2020_

FIRST AMENDED COMPLAINT - 29